

RECEIVED
IN LAKE CHARLES, LA

MAR 28 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DEBBIE HOFFPAUIR** | : | **DOCKET NO. 03-CV-1279** |
| **VS.** | : | **JUDGE MINALDI** |
| **LINDE LIFT TRUCK CORP., ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the court are motions to dismiss pursuant to Rule 12(b)(2) filed by third-party defendants Autoliv Protektor GmbH ("Protektor") [doc. 87] and Grammer AG ("Grammer") [doc. 96]. Third-party plaintiff, Linde Lift Truck Corporation ("Linde Lift"), filed an untimely response to Grammer's motion [doc. 107].[1] No response was filed to Protektor's motion.

### FACTS

On May 30, 2002, plaintiff Debbie Hoffpauir was injured when the seatbelt in the forklift she was operating allegedly malfunctioned.[2] Hoffpauir sued the forklift manufacturer, Linde Lift, who in turn filed a third-party complaint against Protektor and Grammer. Protektor manufactured the

---

[1] Linde Lift's opposition was not timely filed and it will be disregarded. Even if the court were to consider the opposition brief, the attached exhibits are hearsay because they are unaccompanied by an affidavit. *See Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) ("In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985))).

[2] Pet. ¶ 2 [doc. 1]; 1st Am. 3d Party Compl. ¶ 2 [doc. 75].

seatbelt at issue.[3] Grammer manufactured the forklift driver's seat, a component of which is the Protektor seatbelt.[4]

## RULE 12(b)(2) STANDARD

On a motion to dismiss for lack of personal jurisdiction, the party who seeks to invoke the jurisdiction of the federal court bears the burden of establishing the court's jurisdiction over the nonresident defendant. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982)). The invoking party need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not necessary. *Id.* The court must resolve all uncontroverted allegations in the plaintiff's complaint, as well as all facts contested in the affidavits in favor of jurisdiction. *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt*, 686 F.2d at 280), *cert. denied*, --- U.S. ---, 126 S.Ct. 2968 (2006).

## ANALYSIS

In a diversity suit, a federal court's jurisdiction is delimited by the Due Process Clause of the Fourteenth Amendment and the forum state's long-arm statute. *See Wilson v. Belin*, 20 F.3d 644, 646-647 (5th Cir. 1994), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322 (1994) (citing *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990)). Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, La. R.S. 13:3201(B), so the due process and long-arm inquiries fold into one. *Luv n' care, Ltd.*, 438 F.3d at 469. Due process requires that the no federal court assert *in personam* jurisdiction over a nonresident defendant unless that defendant has "certain minimum contacts...such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

---

[3] 1st Am. 3d Party Compl. ¶ 3.

[4] *Id.*

2

justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct., 339, 342 (1940)).

Personal jurisdiction can be either general or specific. Specific jurisdiction may be exercised where the suit arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8, 104 S.Ct. 1868, 1872, n. 8 (1984). The court may exercise general jurisdiction when the defendant has "continuous and systematic general business contacts" with the forum state, but the contacts are not necessarily related to the lawsuit. *Id.* at 414-15, 104 S.Ct. at 1872. Linde Lift does not dispute that Protektor and Grammer lack sufficient contacts to justify general jurisdiction.[5] Therefore, only specific jurisdiction is at issue.

The Fifth Circuit has consolidated the specific jurisdiction inquiry into a three-step analysis: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat

---

[5] Protektor's motion to dismiss is unopposed and in the untimely opposition to Grammer's motion, Linde Lift does not dispute the lack of a basis for general jurisdiction. Nevertheless, the court notes that the Protektor and Grammer affidavits do not demonstrate "continuous and systematic general business contacts" with Louisiana of the sort relied upon by the Supreme Court in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413 (1952), or discussed in *Helicopteros*.

3

jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pignone*, 310 F.3d at 382).

## A. Minimum Contacts

Protektor and Grammer assert that they do not have minimum contacts with Louisiana on the basis of the placement of their products into the stream of commerce. As the instant case presents a stream-of-commerce question regarding nonresident component manufacturers, *Bean Dredging Corp. v. Dredge Technology Corp*, 744 F.2d 1081 (5th Cir. 1984), and *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. 1993) are particularly instructive.

In *Bean Dredging*, a Washington corporation made steel castings which were used in the manufacture of hydraulic cylinders by a California company. 744 F.2d at 1082. The cylinders were then incorporated into a dredge constructed by a Louisiana corporation. *Id.* When the dredge failed in Louisiana due to allegedly defective castings, suit was brought here and third-party claims were filed against the Washington manufacturer. *Id.*

The court determined that the Washington castings manufacturer: (1) had no knowledge of the end-product into which the castings would be incorporated; (2) had never sold directly to a Louisiana company; (3) did not know any castings went to Louisiana; (4) did not negotiate with representatives from Louisiana; (5) did not solicit business in Louisiana; and (6) did not own property in the state. *Id.* Nevertheless, the court cited deposition testimony of the manufacturer's president which "evinced an awareness that...his company's commercial products, once they entered the stream of commerce, might go virtually anywhere." *Id.* Ultimately, the court found minimum contacts, reasoning that although the Washington manufacturer "did not originate the distribution system and [does] not control it, [the company] did place the [steel castings] in and move them along

4

the stream of commerce destined for retail sale [in finished products] throughout the United States." *Id.* at 1085 (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983)) (alterations in original).

In *Ruston Gas Turbines*, a Texas corporation sued an engine manufacturer for breach of contract, breach of warranty, and products liability. 9 F.3d at 417. The engine manufacturer filed a third-party complaint against a Minnesota corporation that had manufactured certain component parts of the engines. *Id.* Relying upon the "stream-of-commerce-plus" theory advocated by the plurality in *Asahi Metal Industries Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026 (1987), the district court dismissed the third-party claim, finding that the Minnesota component manufacturer did not have minimum contacts with Texas. *Id.* at 420.

The Fifth Circuit held that the district court's reliance upon the stream-of-commerce-plus theory was erroneous in that, because *Asahi* did not "provide clear guidance on the 'minimum contacts' prong," this circuit has continued to follow the stream-of-commerce analysis in *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559 (1980). *Id.* Under the *World-Wide Volkswagen* analysis, the court found that the component manufacturer's contacts with Texas were sufficient to justify the exercise of personal jurisdiction. *Id.*

The court reasoned that the component manufacturer "not only *could have foreseen* that the products might end up in Texas, it *knew* as a fact that the products were going to be delivered to a specific user in Houston, Texas." *Id.* (emphasis in original). The court also took note of the fact that, through its relationship with the engine manufacturer, the component manufacturer made 211 shipments of its components to Texas over a 15-year span and that its employees visited Texas to meet with the engine manufacturer's customers. *Id.* at 420-21. Thus, the component manufacturer

5

should have reasonably anticipated that it could be haled into court in Texas. *Id.*

Even under this circuit's fairly permissive stream-of-commerce analysis, Protektor and Grammer lack sufficient minimum contacts with Louisiana to justify the assertion of personal jurisdiction. In an uncontested affidavit, Protektor's managing director, Jens Eisfeld, testified, *inter alia*, that Protektor has never maintained an office or other business establishment in Louisiana, has no bank accounts here, has no registered agents in Louisiana, and has never transacted business here.[6] Similarly, the uncontested affidavit of Grammer board member Peter Nagel states that Grammer has never maintained a business office in Louisiana, has no bank accounts here, has no registered agents in Louisiana, and owns no property here.[7]

Unlike *Bean Dredging* and *Ruston Gas Turbines*, there is no evidence that either corporation was aware or had knowledge that their products, once they entered the stream of commerce, might end up in Louisiana. Without such proof, there is no basis for the assertion of personal jurisdiction over Protektor or Grammer. As the Supreme Court stated in *World-Wide Volkswagen*:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he *should reasonably anticipate* being haled into court there.... The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation* that they will be purchased by consumers in the forum State." 444 U.S. at 297-98, 100 S.Ct. at 567 (emphasis added).

## B. Arising Out Of or Resulting from Forum-related Contacts and Fairness

Since Protektor and Linde lift lack minimum contacts with Louisiana, it is unnecessary to

---

[6] Protektor's Ex. B (Eisfeld Aff.).

[7] Grammer's Ex. (Nagel Aff.).

proceed any further with the specific jurisdiction analysis.

## CONCLUSION

Linde Lift has not presented a *prima facie* case for personal jurisdiction. Accordingly, the motions to dismiss filed by Protektor [doc. 87] and Grammer [doc. 96] will be granted.

Lake Charles, Louisiana, this 24 day of March, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE